UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-12094-RGS

RASHAD AKEEM RASHEED

v.

CARMEN NEWRY, BARTHOLOMEW
NELSON, DAN LACHANCE, PATRICIA
GRANT, DYANA NICKL, PAMELA M.
O'DELL, ANTHONY MENDONSA,
BRUCE GELB, LUIS S. SPENCER, and
UMASS CORRECTIONAL HEALTH

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS

June 12, 2013

STEARNS, D.J.

Plaintiff Rashad Rasheed, a Massachusetts prison inmate and Type II diabetic,

was until recently confined at the Souza-Baranowski Correction Center (SBCC) in

Shirley, Massachusetts.  Rasheed filed this multi-count Complaint alleging deliberate

indifference by SBCC staff and others to his serious medical needs, principally those

involving skin care medications.  Rasheed alleges that defendants have blocked or

confiscated his supplies of free over-the-counter  moisturizing lotion and antibiotic

ointment.  Rasheed alleges that he needs these medications to treat skin conditions

caused by his diabetes, and that he cannot personally afford to purchase them from the

prison canteen.  Compl. ¶¶ 16-17.  The eight-count Complaint alleges violations of the

Eighth Amendment; the Americans with Disabilities Act (ADA); the Religious Land

Use and Institutionalized Persons Act (RLUIPA), and the First, Sixth, and Fourteenth

Amendments.  Rasheed also alleges negligence against defendants Newry and Nelson.

*See* Compl. ¶78.

Defendants move to dismiss the Complaint on various grounds: that Rasheed has

failed to plead sufficient facts to meet the notice  requirement of Fed. R. Civ. P. 8(a)(2);

that the core claims are precluded by Judge O'Toole's rulings in a prior lawsuit brought

by Rasheed; that Rasheed's claims are moot; and that defendants UMass Correctional

Health (UMCH) and the Massachusetts Department of Correction (DOC) as agencies

of the Commonwealth of Massachusetts are immune from suit under the Eleventh

Amendment.  Rasheed opposes the motion contending that defendants have waived any

immunity defense by opposing his prayer for injunctive relief, that res judicata does not

attach as his prior medical needs complaint was dismissed without prejudice, and that

he his constitutional violations are adequately pled.[1]

_____

[1] As Rasheed explains in his Opposition

[c]ontrary to UMCH and DOC defendants erroneous assertions, this is
not a mere disagreement between Rasheed and his medical providers, this
is about intentional interfering with his prescribed diabetes treatment
medication in retaliation for the informal and formal grievances that

BACKGROUND

UMCH, under the auspices of the University of Massachusetts Medical School

(UMMS), provides medical and dental care to prisoners incarcerated at SBCC.

Pursuant to department regulations and the contract with UMMS, in matters involving

the provision of medical services, the DOC officials is obligated to defer to the

independent clinical judgments of UMCH medical personnel. *See* 103 DOC § 610.00

et seq.  The DOC contract with UMMS provides, in pertinent part:

> [t]he Contractor shall be solely responsible for making all decisions with
> respect to the type, timing and level of services needed by Inmates
> covered by the program, including, without limitation, the determination
> of whether an Inmate is in need of clinic care, hospitalization, admission
> to a clinic, referral to an outside specialist or otherwise needs specialized
> care.

According to the Complaint, in October of 2011, UMCH personnel prescribed

Sween Cream, Bacitracin, Erythromicin, and tolnaftate powder and cream to treat

--------------------------------

> Rasheed filed against UMCH and DOC defendants; intentional
> confiscation of prescribed diabetes treatment medication; Superintendent,
> grievance personnel and other staff failure to attempt to remedy UMCH
> defendants Newry and Nelson unlawful and intentional interfering with
> Rasheed's prescribed diabetes treatment medication; and Rasheed's
> actual physical injury, pain and suffering caused by UMCH and DOC
> defendants' policy of requiring indigent prisoners to purchase their
> prescribed treatment medication from the prison canteen.

Pl. Opp'n Mem. at 4.

diabetic sores on Rasheed's toe, foot and leg.  *See* Compl. ¶ 20.  In December of 2011, Bartholomew Nelson, a UMCH nurse practitioner, renewed these prescriptions for another 130 days.  *Id.* ¶ 21.  However, Rasheed contends that in January of 2013, Carmen Newry, another UMCH nurse practitioner, "refused to provide Rasheed his prescribed Bacitracin because [he] refused to explain to her why he needed [it] and permit her to examine him."[2]  *Id.* ¶ 22.  Three days later, Rasheed again asked Newry for Bacitracin and was refused.  Rasheed complained about Newry's refusal to Dan LaChance, a UMCH employee.  "On February 5, 2012, Rasheed filed a formal medical grievance against Newry after receiving no response from [LaChance]."  *Id.* ¶ 27. Rasheed contends that Newry then retaliated against him by writing in the medical record that Rasheed  "needs to be re-eval; needs to return empty Bacitracin for new one; and refused to show toe to N.P."  *Id.* ¶ 25. On February 8, 2012, at Newry's request, Nelson sought to re-examine Rasheed.  On February 9, 2012, Newry reduced Rasheed's Bacitracin prescription to one packet every three days.  Rasheed claims that without a sufficient treating supply of Bacitracin, his diabetic sores "became infected

---

[2] Rasheed states that his refusal was based on his Islamic religious beliefs and that he later explained to Newry "that under Islamic laws only his wife may touch him or view him unclothed . . . and he requested to see [] male medical personnel." Compl. ¶ 39.

and very painful precluding [him] from walking to pick-up his three daily meals and from participating in other daily activities." *Id.* ¶ 30.  On February 11, 2012, Rasheed complained a second time to LaChance about Newry and showed LaChance the sores on his toe, left foot and leg.  Rasheed then filed a "formal DOC grievance (No. 57553)" concerning "Newry's refusal to provide him Sween Cream and Bacitracin." *Id.* ¶ 36.  On March 21, 2012, Newry is alleged to have ordered a corrections officer to enter Rasheed's cell and confiscate "four containers of Sween Cream; four containers of E-mycin and four containers of Clindamycin that were evidence in Rasheed's pending lawsuit *Rasheed v. D'Antonio*, D. Mass. 10-11253-GAO." [3] *Id.* ¶ 43.  Rasheed asserts

---

[3] Rasheed brought a previous lawsuit in the federal district court in 2010, that included claims for relief relating to the provision of medications for treatment of his diabetes, including OTC moisturizer and antibiotic ointment.  *See Rasheed v. D'Antonio*, D. Mass. 10-11253-GAO, Dkt #269 at 75-78.  In Judge O'Toole's Order adopting the Magistrate Judge's 107-page Report and Recommendation (Dkt. # 267), he entered judgment of dismissal *with prejudice* in favor of UMHC and the named individual defendants.  *See id.*, Dkt. #269 at 3.  Defendants in this case argue that Rasheed's current claims are barred by issue preclusion as "the previous lawsuit was not resolved until September of 2012 and . . . Rasheed had the opportunity to litigate these [same] issues" in that suit.  It is true that "*res judicata* (claim preclusion) normally bars (1) relitigation of claims actually asserted in a tribunal of competent jurisdiction . . . and (ii) litigation of claims that arose from the same set of operative facts and *could have been raised* in the prior proceeding." *Wolf v. Gruntal & Co. Inc.,* 45 F.3d 524, 527 (1st Cir. 1995) (emphasis added).  As Rasheed's present Complaint succumbs to fundamental jurisdictional and pleading deficiencies, there is no reason for the court to seek further briefing on whether Rasheed in fact had a sufficient opportunity to amend the prior lawsuit to include his present claims.

that on March 28, 2012, Nelson retaliated against him by suspending his free supply

of Sween Cream and Clindamycin.  Rasheed claims that Nelson told him to purchase

these items from the prison canteen despite knowing that he is indigent.

Dr. Patricia Ruze, the Site Medical Director for MCI Concord (where Rasheed

is presently confined), states in an affidavit that Rasheed has been given Sween Cream

and Clindamycin to treat and prevent any future skin irritations.  However, "instead of

properly using this medication as prescribed," Rasheed "maintained 4 bottles of

Clindamycin and 2 jars of Sween Cream [in his cell]."  Ruze Aff. ¶ 6.

> As a result of Mr. Rasheed's failure to properly use these medications, and the fact that they no longer appeared medically necessary, his prescription for the same was discontinued.  In June of 2012, Mr. Rasheed was prescribed Erythromycin gel to treat a skin infection. However, Mr. Rasheed did not pick up this medication, and his prescription was not renewed on June 23, 2012.  Starting in February 2013, Mr. Rasheed has been provided Bacitracin three times a week to treat and prevent skin infections. . . . On April 24, 2013, Mr. Rasheed . . . requested and was provided with Sween Cream which he continues to receive. . . . Mr. Rasheed [did not] complain of skin infections nor were any skin disturbances noted [at April 17, 2013, April 24, 2013, or May 1, 2013 medical appointments].  On May 22, 2013, Mr. Rasheed received a comprehensive "chronic care examination" by a nurse practitioner, which would have specifically included a skin check.  Mr. Rasheed refused to remove his socks, but his skin was otherwise clear and again Mr. Rasheed did not complain of any issues with his skin.  Currently [as of May 23, 2013] Mr. Rasheed has no issues with his skin, and any potential infections are being treated with Sween Cream and Bacitracin.

*Id.* ¶¶ 7-16.

DISCUSSION[4]

Under Rule 12 of the Federal Rules of Civil Procedure, a defendant may move for dismissal of a plaintiff's complaint if the court "lack[s] . . . jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence."  *Id.*, quoting *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993).  As explained by the First Circuit, the "Eleventh Amendment has been described as implicating subject-matter

---

[4] Defendants assert that Rasheed has failed to adequately plead his claims.  To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Id.* at 555 (internal citations omitted); s*ee also Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95-96 (1st Cir. 2007).  The court agrees with defendants that Rasheed has failed to plead any facts plausibly supporting a claim under the ADA (Rasheed makes no claim of a non-treatable limitation on a major life activity, nor does the ADA impose liability on individual defendants).  There is also no viable claim pled under RLUIPA (the failure to be provided with  skin treatments is not shown to substantially burden the exercise of a religious belief).  Nor is there any plausibly pled First Amendment retaliation claim (there is no claim of protected expression on a matter of public concern) or Sixth Amendment violation (which applies only in criminal prosecutions).  Rasheed's negligence (medical malpractice) claims against Newry and Nelson individually are preempted by the Massachusetts Tort Claims Act (MTCA). *See* Mass. Gen. Laws ch. 258, § 2; *Smith v. Steinberg*, 395 Mass. 666, 667 (1985) (finding orthopedic surgeon from UMMS a public employee and thus immune from suit under the MTCA).  Finally, no viable claims are made out against the individual DOC defendants as none of these defendants were involved in the decisions made with respect to Rasheed's medical care.

jurisdiction." *Davila v. Corporacion de Puerto Rico Para La Difusion Publica*, 498 F.3d 9, 13 (1st Cir. 2007).

Under the Eleventh Amendment, "states are immune . . . from private suit in federal courts, absent their consent" for claims seeking money damages. *Greenless v. Almond*, 277 F.3d 601, 606 (1st Cir. 2002). This immunity extends to any entity that is an "arm of the state." *Wojcik v. Massachusetts State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002). Whether an agency is in fact an "arm of the state" is determined by federal law. *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 n.5 (1997). The federal test considers, among other factors, the agency's ability to satisfy judgments from its own funds, whether its functions are governmental or proprietary, whether the agency is separately incorporated, the extent to which the State exerts control over the agency, whether the agency has the power to sue in its own right, whether its property is taxed by the State, and whether the State has immunized itself from the agency's acts or omissions. *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth.*, 991 F.2d 935, 939-940 (1st Cir. 1993). Where the factors point in conflicting directions, "then the dispositive question concerns the risk that the damages will be paid from the public treasury." *Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular Ctr. Corp.,* 322 F.3d 56, 68 (1st Cir. 2003).

In applying the test, federal courts have uniformly found that UMMS is an

agency of the state created by a statute, Mass. Gen. Laws ch. 75, §34, that specifically authorizes the Trustees of the University of Massachusetts to create and maintain a medical school and is thus shielded by Eleventh Amendment immunity.  *See, e.g., Orell v. Umass Memorial Med. Ctr., Inc.*, 203 F. Supp. 2d 52, 60 (D. Mass. 2002) (UMMS "is a public institution established under the laws of the Commonwealth and is, accordingly, an agency of the state entitled to Eleventh Amendment immunity.").  It follows that UMCH, which is a component of UMMS created to provide medical care for state prisoners, shares the same attributes of sovereign immunity.  *See Cullinan v. Mental Health Mgmt. Corr. Servs., Inc.*, 2012 WL 2178927, at *1-2 (D. Mass. June 11, 2012) (finding Eleventh Amendment immunity as to prisoner's section 1983 claims); *McGee v. UMass Corr. Health*, 2010 WL 3464282, at *2-3 (D. Mass. Sept. 1, 2010)  ("The Court accordingly finds that UMCH, as a program completely encapsulated within UMMS and the UMass, is an arm of the state for purposes of determining Eleventh Amendment immunity."); *Jaundoo v. Clarke*, 690 F. Supp. 2d 20, 29 (D. Mass. 2010) ("Because UMCH is a program operated by the UMMS, it too is an arm of the State.").[5]  Accordingly, Rasheed's claims against UMCH are dismissed

---

[5] Any judgment against UMCH would be paid by the State or by insurance purchased by the University for the purpose of paying claims against the State.   The University of Massachusetts treasury consists of State funds.  *See* Mass. Gen. Laws ch. 75, §6 (subjecting all accounts of the university to oversight by the state auditor); Mass.

for lack of subject matter jurisdiction.[6]

ORDER

For the foregoing reasons, defendants' joint motion to dismiss is <u>ALLOWED</u>.

The Clerk will issue an Order of Dismissal and close the case.

SO ORDERED.


/s/ Richard G. Stearns

_____

_____

Gen. Laws ch. 75, §7 (making the university's budget subject to the direction of the governor); and Mass. Gen. Laws ch. 75, §8 (authorizing the Legislature to appropriate state funds to the University).  *See* Quinn Aff. - Dkt. #29-1.

[6] These claims, which are largely based on the Eighth Amendment, also lack substantive viability.  At their core is a disagreement between Rasheed and his health providers over the proper choice of dermatotherapy – Rasheed believes that he should be prescribed Erythromycin and be given greater amounts of Sween Cream, while in Dr. Ruze's judgment Bacitracin and the current dosage of Sween Cream are the appropriate medical choice.  Dkt. #43 - Rasheed Aff. ¶ 13; Dkt. # 40 - Ruze Aff. ¶¶ 7, 10, and 16.  A disagreement by a prisoner with the informed decision of a medical professional over the proper course of treatment does not raise a constitutional issue. *See Youngberg v. Romeo*, 457 U.S. 307, 322-323 (1982) ("[T]here certainly is no reason to think judges or juries are better qualified than appropriate professionals in making such decisions.");  *Doe v. Gaughan*, 808 F.2d 871, 884 (1st Cir. 1986) ("[T]reatment . . .decisions, if made by a professional are presumptively valid."); *Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981) ("The right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice.").

UNITED STATES DISTRICT JUDGE